## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DIANE RODRIGUEZ,
      *Plaintiff*,

v.

WAL-MART STORES EAST, LIMITED
PARTNERSHIP,
      *Defendant*.

No. 3:20-cv-371 (MPS)

## <u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff Diane Rodriguez has sued her former employer, Wal-Mart Stores East, L.P.,

("Wal-Mart"), alleging that it violated the Connecticut Fair Employment Practices Act

("CFEPA"), Conn. Gen. Stat. §§ 46a-60, *et seq*., by subjecting her to pregnancy- and gender-

based discrimination and by retaliating against her for engaging in conduct protected by that

statute. ECF No. 1-1. She further alleges that Wal-Mart violated the Family and Medical Leave

Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*., by retaliating against her for exercising her leave

rights.[1] *Id*. Wal-Mart moves for summary judgment on all claims. ECF No. 21. For the reasons

set forth below, Wal-Mart's motion is GRANTED.

### I.      Factual Background

The facts set forth below are taken from the parties' Local Rule 56(a) statements and are

undisputed unless otherwise noted.[2]

---

[1] Rodriguez's complaint also included hostile work environment and FMLA interference claims, but she does not contest entry of summary judgment on those claims. ECF No. 26 at 1.

[2] Rodriguez filed a Local Rule 56(a) statement that exceeded the page limit by ten pages. *See* Local R. 56(a)2 (stating that the portion of the 56(a)2 statement responding to the 56(a)1 statement shall be no longer than twice the length of the 56(a)1 statement, and that the portion of the 56(a)2 statement setting forth additional material facts shall be no longer than nine pages). In addition, Rodriguez cited evidence in her opposition brief that was not cited in her 56(a)2 statement. The Court has nevertheless considered both her 56(a)2 statement and the evidence cited in her brief. Nonetheless, the Court has not considered additional factual narratives offered by the plaintiff after her

Rodriguez (née Kaplun) was employed by Wal-Mart as an Assistant Store Manager ("ASM") in the apparel/home sales department at the Waterbury, Connecticut Wal-Mart store. ECF Nos. 21-9 at ¶ 1; 26-17 at Section II, ¶ 1.  She began working at the Waterbury store in December 2017, reporting to Store Manager Michael Cunningham and Co-Manager Tamara Sweeney.  *Id.*  Cunningham left Wal-Mart in February 2018, and his position was "back-filled" by John Enica in April 2018.  *Id.*  From April 2018 until her termination in July 2019, Rodriguez reported to Enica and Sweeney.  *Id.*

### A.  ASM Role

ASMs are responsible for the hiring, training, mentoring, duty assignment, and evaluation of associates (i.e., other employees) in assigned areas of the store.  ECF Nos. 21-9 at ¶ 2; 26-17 at Section II, ¶ 2.  Rodriguez was assigned to the Waterbury store's apparel department.  *Id.*  According to Rodriguez, she was required to perform physical tasks when working closing shifts as an ASM—she testified at her deposition that "closing [was] a very, very, very physical job." ECF No. 26-1 at 77.  She was required to "pull pallets" and "unload trucks."  *Id.* at 76.

### B.  Denial of PTO

According to Rodriguez, Enica "denied all of [her] PTO [paid time off]" requests.  ECF No. 26-1 at 94.  Rodriguez could see that other employees—"Nelson [Zinc], Vincent [Clark], Viria [Massa], John [Baldino], and Andrew [Chamberlain]"—were given time off.  *Id.* at 26-1 at 96-97.  On June 24, 2018, after Enica again denied a request for PTO, Rodriguez emailed Wal-Mart's Market Manager, La'Shion Robinson, to complain.  ECF No. 26-12.  She and Robinson then had a "very short" conversation about her email, and Robinson told Enica to give Rodriguez some of the PTO she had requested.  ECF No. 26-1 at 94.  According to Rodriguez, "Enica

---

admission or denial of Wal-Mart's averments, because the placement of these narratives does not comply with Local Rule 56 and, in any event, Rodriguez does not explain how these extra facts create genuine disputes of material fact.

didn't seem happy about it . . . . [he] looked a little bit mad when [Robinson] told him to give [Rodriguez] at least some of the time off." *Id.*[3]

### C. Wal-Mart's Disciplinary Policy

Wal-Mart maintains a Disciplinary Action Policy, which was updated during the period of Rodriguez's employment (on April 1, 2019).  ECF Nos. 21-9 at ¶ 5; 26-17 at Section II, ¶ 5; 26-2 at 4-7.  The substance of the policy before and after the update was the same.  *Id.*  Both policies laid out three levels of disciplinary actions (or "coachings")—First Written (or Yellow), Second Written (or Orange), and Third Written (or Red).  ECF No. 26-2.  Both policies provided that a higher level of disciplinary action could be issued either as a second (or third) warning following issuance of a lower level of discipline, or as a first discipline if appropriate in light of the employee misconduct at issue.  *Id.* at 1, 5.  Both policies also indicated that Wal-Mart could terminate an employee outside of the three-step framework if the employee's "unacceptable performance and/or conduct is found to be serious."  *Id.* at 2, 6.

### D. August-October, 2018 FMLA Leave and August 21, 2018 Disciplinary Action

On August 9, 2018, Rodriguez's request for a six-week FMLA leave of absence was approved, with her leave to run from August 26, 2018 to October 5, 2018.  ECF Nos. 26-3; 21-9 at ¶ 6; 26-17 at Section II, ¶ 6.  The Waterbury store planned to conduct a storewide inventory review during the time when Rodriguez would be on leave.  ECF Nos. 21-9 at ¶ 7; 26-17 at Section II, ¶ 7.  On August 21, 2018, Rodriguez received a First Written (Yellow) disciplinary action for a few issues including her failure to ensure that enough rolling racks were available in her section to accommodate new merchandise that was coming in and for "not hav[ing] a plan in

---

[3] Rodriguez also testified at her deposition that Sweeney later told her that "[Enica] was mad he had to even [give her that time off]," *id.*, but this statement likely constitutes inadmissible hearsay.  Fed. R. Evid. 802; *see also* Fed. R. Civ. P. 56(c)(2), (c)(4) (requiring material supporting summary judgment briefs to be admissible in evidence).

place for inventory . . . another Asm had to put a plan in place." ECF No. 26-4 at 11. Rodriguez testified at her deposition that while Tamara Sweeney "initiate[d]" the "coaching" and was present in the room when Rodriguez was informed of it, Enica was also present for the meeting and did most of the talking. ECF Nos. 26-1 at 63-66.

According to Rodriguez, it was not her fault that the rolling racks were not available. She testified at her deposition that the two male managers of the shift before hers pulled the associates Rodriguez has assigned to empty the racks to work on a different task. ECF No. 26-1 at 60. She testified at her deposition that the managers for the relevant day's earlier shift had not done the work that she was typically expected to do when she worked the earlier shift. *Id.* at 67. She testified that she told Enica "that it wasn't right or fair for [her] to get held accountable for what was going on because [she] took no part in it, that the day managers should have been held responsible," but that Enica was "persistent" that it was "[her] department" and "[her] area." *Id.* at 65. While Rodriguez asserts that the two male managers of the earlier shift were not disciplined, she has presented no admissible evidence in support of that assertion.[4]

Rodriguez also maintains she provided the associates under her supervision with instructions for what to do during her leave of absence, but that her associates did not follow her instructions, informing Rodriguez that "they already were given direction from two other male managers, and that they were told by those male managers not to listen to what [Rodriguez] had to say because [Enica] told [the male managers] they were in charge." ECF No. 26-1 at 68. Wal-Mart does not dispute that Enica "delegated management responsibility for inventory in

---

[4] Her testimony that one of the male ASMs was not held accountable was based on an assumption she made after not hearing that he had been disciplined, as well as that ASM telling other members of management "oh, yeah, I'm not going to get held accountable for that." ECF No. 26-1 at 61. Rodriguez's assumption is not based on any personal knowledge regarding whether the ASM was disciplined, and the statement she attributed to him in her deposition is inadmissible hearsay. *See* Fed. R. Evid. 602, 802. Her testimony that the other ASM was not disciplined was based on him telling her he "didn't get held accountable" and apologizing to her for that, but that statement is also inadmissible hearsay. *Id.*

[Rodriguez's] areas to several other ASMs." ECF No. 21-8 at 3 ¶ 11.  But according to Wal-Mart, Enica only did so after Rodriguez "failed to establish plans to management's satisfaction" because "[a]lthough [] Rodriguez would not be present for the inventory review, she was expected to establish inventory review plans for her areas of responsibility during the weeks leading up to her leave to be executed in her absence." *Id.*[5]

Rodriguez, concerned she was being treated differently from her male coworkers, challenged the August 21, 2018 disciplinary action by emailing Wal-Mart's Market Manager, La'Shion Robinson, on August 29.  ECF No. 26-5 at 1.  Robinson responded asking her to reach out to him after her return from leave.  *Id.*  Rodriguez did so, emailing Robinson on October 7 to set up a time to discuss.  *Id.* at 2.  They ultimately spoke and, during that conversation, Robinson told Rodriguez that if after 60 or 90 days she had shown that she did not have a productivity issue, he would remove the disciplinary write-up.  ECF No. 26-1 at 89.[6]  Because Robinson ended up leaving his position before the 60-90 day period was over, the write-up was never removed.  *Id.*

### E.  November 7, 2018 Disciplinary Action

On November 7, 2018, Rodriguez received a Second Written (Orange) disciplinary action for job performance based on a key control violation.  ECF Nos. 26-4 at 6, 11; 21-9 at ¶ 10; 26-17 at Section II, ¶ 10.  According to Rodriguez, other managers also gave their keys to associates.  She testified at her deposition that Andrew Chamberlain  and John Baldino gave their keys out to associates.  ECF No. 26-1 at 100-101.  She testified that she "d[id] not know"

---

[5] Rodriguez also seeks to present testimony from her deposition in which she states that it was "around that store that [Enica] was . . . pissed off at [her]" prior to her leave because she "wasn't going to be there for inventory," ECF No. 26 at 206, but this evidence—where, as here, offered for its truth—is inadmissible hearsay.  Fed. R. Evid. 802.

[6] Robinson's statements are likely admissible as opposing party statements because Robinson was Wal-Mart's employee, and he was speaking "on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).

whether either was disciplined for doing so, but that she observed both continuing to commit key code violations during her period of employment, and so assumed they were not disciplined. *Id.* at 101. She testified that she told Enica and Sweeney that other ASMs were not being held accountable and that she stated, "if you are going to hold me accountable, you need to hold other assistant managers accountable." *Id.* at 101. She testified that Enica told her "not to worry about what other assistant managers do." *Id.* She testified that she did not know whether store employees improperly threw away merchandise on the occasions when Chamberlain and Baldino gave out their keys. *Id.* at 103-104.

### F.  February 19, 2019 Disciplinary Action

Rodriguez received a Third Written (Red) disciplinary action for job performance on February 19, 2019. ECF Nos. 26-4 at 6, 11; 21-9 at ¶ 12; 26-17 at Section II, ¶ 12. She registered a complaint about it with Wal-Mart Regional Vice President Glen Spencer, who referred the matter to the new Market Manager, Jeffrey Petersen. ECF Nos. 21-9 at ¶ 13; 26-17 at Section II, ¶ 13. Petersen evaluated and cancelled the disciplinary action. *Id.*

### G.  March 30, 2019 Performance Review

On March 30, 2019, Enica delivered Rodriguez's annual performance evaluation, rating her as "development needed." ECF Nos. 21-9 at ¶ 14; 26-17 at Section II, ¶ 14. Rodriguez had previously received ratings of "Development Needed" in 2015, "Solid Performer" in 2016, "Development Needed" in 2017, and "Solid Performer" in her 2018 evaluation prepared by Cunningham and delivered by Enica. *Id.* Rodriguez made a complaint to Petersen about the 2019 evaluation, but he declined to alter the rating. ECF Nos. 21-9 at ¶ 15; 26-17 at Section II, ¶ 15; 26-8.

### H.  April 3, 2019 Foot Surgery and Subsequent FMLA Leave

On April 3, 2019, Rodriguez had a benign lesion removed from her foot; following the procedure, she needed to wear special post-operative footwear.  ECF Nos. 21-9 at ¶ 16; 26-17 at Section II, ¶ 16.  On April 5, she made a request for accommodation to Wal-Mart's third-party accommodations and leave of absence claims administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick").  ECF Nos. 21-9 at ¶ 17; 26-17 at Section II, ¶ 17.  Sedgwick denied the request and directed Rodriguez to speak to Enica about a "job adjustment" that would allow her to wear an open-toed boot or use a manual wheelchair.  *Id.*  Enica approved Rodriguez's request, but, according to Rodriguez, he then assigned her to the "very, very physical" closing shift.  ECF No. 26-1 at 132.  During that shift, he summoned her to the back of the store, where he berated her in front of other employees regarding the state of the back room.  *Id.*  Rodriguez testified at her deposition that Enica "yelled at [her] . . . just scream[ed] and yell[ed] at [her] and t[old] [her], with [her] open-toed boot, go pull pallets, start throwing things on the floor, and, you know, he just kind of went crazy on [her]."  *Id.* at 133-34.  According to Rodriguez, she reminded Enica that he had approved her performing lighter duties "that would not require her to walk around or lift" while she was recovering from her operation.  *Id.* at 132.  She also told Enica that it had been the job of two male ASMs, Nelson Zinc and Vincent Clark, to help set up the back room, and asked why Enica was yelling at her for the room not being set up.  *Id.* at 132.  Ultimately, she walked away and called her doctor.  *Id.* at 134.

On April 8, Rodriguez applied for short-term disability/FMLA leave.  ECF Nos 21-9 at ¶ 19; 26-17 at Section II, ¶ 19.  Rodriguez's doctor provided a certification indicating that Rodriguez should refrain from standing, walking for prolonged periods of time, lifting, climbing, pulling, or pushing.  *Id.*  Her doctor also noted that she had an unsteady gait and would require frequent post-surgical follow-up appointments.  *Id.*  Sedgwick granted Rodriguez's leave request

on April 16, affording her 3.25 weeks of job-protected leave at 100 percent of her base pay.  ECF Nos 21-9 at ¶ 20; 26-17 at Section II, ¶ 20.  Rodriguez returned to work on May 3, 2019 following her leave.  ECF No. 26-1 at 131.

### I.   May 24, 2019 Notice to Management of Pregnancy

On May 24, 2019, Rodriguez told Sweeney that she was pregnant.  ECF No. 26-1 at 149. She did not have a conversation with Enica regarding her pregnancy at that time, although she testified at her deposition that she believed that she had copied him on a June email to either Petersen or Canales stating that Enica "was making [her] do physical labor, and that [she] was pregnant and that [she] had to . . . take it easy."  *Id*.

### J.   June 5, 2019 Helpline Complaint

On June 5, 2019, Rodriguez made an anonymous complaint to Wal-Mart's Global Ethics Helpline accusing Enica of "bullying" and "harassment."  ECF Nos 21-9 at ¶ 21; 26-17 at Section II, ¶ 21.  Rodriguez accused Enica of belittling her and demeaning her character, as well as of mismanaging female members of management.  *Id*.  She also stated that "female members of management generally t[ook] all the flack coming from John no matter who is responsible for the issue or matters" and that Enica "ha[d] an issue with females."  ECF No. 26-9 at 1.  She stressed that she did not want her identity revealed to Enica and requested that the report not be investigated by the Market team because she feared retaliation from Enica and that team.  ECF Nos 21-9 at ¶ 21; 26-17 at Section II, ¶ 21.  Rodriguez also reported that she was the only "member on management who [wa]s currently pregnant."  ECF No. 26-9 at 1.

### K.   June 6, 2019 Request for Intermittent FMLA Leave for Pregnancy

On June 6, 2019, Rodriguez submitted a request to Sedgwick for intermittent FMLA leave related to her pregnancy.  ECF Nos. 21-9 at ¶ 23; 26-17 at Section II, ¶ 23.  Sedgwick

approved the request on June 28, retroactive to June 6 and with an end date of January 28, 2020. *Id.* The leave was approved, but Rodriguez did not use—or attempt to use—any intermittent leave time prior to the termination of her employment. *Id.* In connection with Rodriguez's request or intermittent leave, her physician specified several accommodations, including a twenty-pound lifting restriction, a periodic rest requirement, and a standing limitation. ECF Nos. 21-9 at ¶ 24; 26-17 at Section II, ¶ 24. Wal-Mart approved each of these accommodations. *Id.*

    *L.   June 7, 2019 Disciplinary Action*

On June 7, Enica initiated and delivered a Third Written ("Red") coaching to Rodriguez for unsatisfactory job performance. ECF Nos. 21-9 at ¶ 25; 26-17 at Section II, ¶ 25. Rodriguez made a complaint regarding this coaching to Petersen, who then cancelled the coaching. ECF No. 21-3 at 6 ¶ 28.

The parties dispute whether Enica was aware of Rodriguez's request for intermittent leave at the time he issued the June 7 coaching. According to Wal-Mart, Enica issued the coaching at 10:39 a.m. on June 7 and did not learn of the leave request until 1:42 p.m on that date. ECF No. 21-8 at 5 ¶ 24; 21-7 at 39. According to Rodriguez, Enica was aware that she was pregnant because other members of management were aware and because she had already had to modify her work schedule to attend a pregnancy-related appointment. She testified at her deposition that she had asked Sweeney for a schedule change to permit her to attend that appointment, which Sweeney had given her. ECF No. 26-1 at 153. When she reminded Enica the morning of her appointment that she needed to leave at 1:00 p.m. in order to make her appointment, he indicated that he was aware. *Id.* at 155. Rodriguez testified at her deposition that Enica nevertheless pulled her into his office to discuss something and then kept her there

"way past 1:00," making her so late to her appointment that she almost missed it entirely. *Id.* at
155-56.

### M. June 27-July 1 Complaints from Associates

Between June 27, 2019 and July 1, 2019, at least seven Waterbury store employees made
"Open-Door" complaints regarding Rodriguez's conduct as an ASM.[7]  ECF No. 21-7 at 42-50.
Those complaints described Rodriguez as a "rude," "disrespectful," "neglectful" manager who
raised her voice at associates. *Id.*  One associate complained that Rodriguez would "throw[]
boxes on the ground . . . and expect [that associate] to pick them up from the floor without
asking." *Id.* at 46.  Another described Rodriguez climbing "on top of the steel [frame]" while
she was pregnant and in violation of company policy to move a display item on the morning of
June 7, 2019. *Id.*at 43.  At her deposition, Rodriguez denied climbing up on the steel frame,
stating "I did not climb up.  There was a ladder." ECF No. 26-1 at 187.

### N. July 8, 2019 Termination

On July 8, 2019, Enica consulted with Canales regarding Rodriguez's job performance
and proposed that her employment be terminated.  ECF Nos. 21-9 at ¶ 29; 26-17 at Section II, ¶
29; 21-3 at 6 ¶ 30; 21-8 at 6 ¶ 28.  Canales supported the termination recommendation. *Id.*
Enica and Sweeney informed Rodriguez that her employment was being terminated. *Id.*  The
parties dispute whether Enica told Rodriguez why she was being fired.  According to Wal-Mart,
Enica told Rodriguez that he was terminating he employment due to "her inability to perform her
job due to multiple Open-Door complaints, unsafe work practices, and violations of Wal-Mart's

---

[7] Rodriguez testified at her deposition that "department manager Antonio" "told [her] that . . . [Enica] kept trying to
get as many statements against [her] as he could while [she] was on vacation."  ECF No. 26-1 at 199.  But this
statement from "Antonio" is inadmissible hearsay.

core beliefs, chief among them respect for the individual." ECF No. 21-8 at 6 ¶ 28.  According to Rodriguez, "[z]ero information [was] provided to [her] about [her] termination."  ECF No. 26-11 at 1.

### O.  Enica's Treatment of Other Employees

#### a.  Male Employees

On November 12, 2018, a male ASM was placed on a second level disciplinary "coaching" for poor judgment.  ECF Nos. 21-9 at ¶ 31; 26-17 at Section II, ¶ 31.  On December 7, another male ASM was placed on a first level disciplinary coaching for job performance.  ECF Nos. 21-9 at ¶ 32; 26-17 at Section II, ¶ 32.  On January 28, 2019, a third male ASM was placed on a second level disciplinary coaching for job performance. ECF Nos. 21-9 at ¶ 33; 26-17 at Section II, ¶ 33.  On February 12, a fourth male ASM was placed on a second level disciplinary coaching for a key control violation.  ECF No. 4 ¶ 18.[8]

#### b.  Female Employees

According to Rodriguez, Enica subjected three female Wal-Mart employees—Sweeney, Viria Massa, and Christina Sheets—to discriminatory and disparate treatment due to their gender.  But she has failed to present any admissible evidence in support of this assertion.  With respect to Sweeney, Rodriguez testified at her deposition that on one occasion, Sweeney requested time off to attend a family member's funeral, and Enica permitted her to take some time off but "told her that she needed to make it short."  ECF No. 26-1 at 42.  Rodriguez testified that Sweeney was "very, very upset with that," and that Sweeney "was very vocal with [her

---

[8] Rodriguez denies that this occurred but offers no evidence that it did not; rather, she cites her deposition testimony asserting, without personal knowledge, that the two male ASMs were never disciplined for key control violations. ECF Nos. 26-17 at Section II, ¶ 34; 26-1 at 100-101.

management team] on how that bothered her and how that made her feel." *Id.* Rodriguez's testimony on this issue appears to recount what Sweeney told her about the situation, and so constitutes inadmissible hearsay. Fed. R. Evid. 802. Rodriguez also testified that requests from male employees to attend "funerals or anything" were "always" granted. ECF No. 26-1 at 45. She testified that she specifically recalled Vincent Clark being given a lot of time off to attend a family member's funeral. *Id.* at 46. Rodriguez also testified that Sweeney told her that Sweeney wished to transfer stores in part because "[Sweeney] and [Enica] were always having different opinions," *id.* at 44, but this statement is inadmissible hearsay. Sweeney was ultimately promoted to the role of Store Manager at another Wal-Mart location, and she never complained about Enica to Wal-Mart. ECF Nos. 21-9 at ¶ 37; 26-17 at Section II, ¶ 37.

With respect to Massa, Rodriguez testified at her deposition that her assertion that Enica subjected Massa to discriminatory and disparate treatment that prompted Massa to seek a transfer to another store was based on what Massa told Rodriguez about the situation. ECF No. 26-1 at 47-48 ("Q. In paragraph 23 of your complaint, you allege that Viria actively sought a transfer to another store on account of the same, and that refers to treatment by John Enica. What's the basis for that allegation? A. She told me herself.") Thus, it appears that Rodriguez lacked personal knowledge about the situation and is relying on inadmissible hearsay. Fed. R. Evid. 602, 802. In addition, while Rodriguez testified that Massa told her that she had heard from others that Enica "ha[d] a thing [with] females, and if he's not doing something on the side with them, he's going after them," ECF No. 26-1 at 186, that statement is double hearsay and inadmissible. Fed. R. Evid. 802. Enica rated Massa as "Exceeds Expectations" in both 2019 and 2020, and he promoted her to the position of "front end coach" in November 2020. ECF Nos. 21-9 at ¶ 35;

26-17 at Section II, ¶ 35.  Massa has never reported to Wal-Mart that Enica subjected her to gender-based mistreatment.  *Id.*

With respect to Sheets, Rodriguez testified at her deposition that Sheets was employed at Wal-Mart for over a decade but was terminated within "about eight months" of Enica's arrival after receiving an onslaught of write-ups for her job performance, even though the store looked a lot better following a shift that she managed than it did following a shift managed by one of her male counterparts.  ECF No. 26-1 at 49-50.  Rodriguez testified that she "d[idn't] know if [the male manager] had performance write ups."  *Id.* at 51.  According to Wal-Mart, Sheets was discharged for "well-documented performance deficiencies" and never lodged a complaint of discrimination against Enica with Wal-Mart.  ECF No. 21-3 at 6 ¶ 31.

## II.     Legal Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted).  In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating

the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358

(2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### III.   Discussion

#### A.   CFEPA Gender Discrimination Claim

##### i.   Applicable Law

Rodriguez's CFEPA discrimination and retaliation claims are subject to the same

*McDonnell Douglas* burden-shifting framework applicable to Title VII discrimination and

retaliation claims. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010); *see also*

*Feliciano v. Autozone, Inc.*, 111 A.3d 453, 459 (Conn. 2015) ("[Connecticut courts] look to

federal law for guidance on interpreting state employment discrimination law, and the analysis is

the same under both."). Under this framework, a plaintiff must first establish a *prima facie* case

of discrimination "by showing that: (1) [s]he was a member of a protected class; (2) [s]he was

competent to perform the job in question, or was performing the job duties satisfactorily; (3)

[s]he suffered an adverse employment action; and (4) the action occurred under circumstances

that give rise to an inference of discrimination." *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir.

2010). "The burden a plaintiff, alleging that [s]he was discriminated against by h[er] employer,

carries to survive a summary judgment motion at the *prima facie* stage is a minimal

one." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d. Cir. 2000). Once the plaintiff has

established a *prima facie* case, the burden then "shifts to the employer to articulate a legitimate,

non-discriminatory reason for the employee's dismissal." *Id.* If the employer is able to provide

such a reason, then the employee must demonstrate "that the legitimate reason[] offered by the

[employer] w[as] not its true reasons, but w[as] a pretext for discrimination." *Tex. Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

14

*ii.* Prima Facie *Case*

Wal-Mart does not contest that Rodriguez is a member of a protected class competent to perform the job of an ASM, nor that her termination constituted an adverse employment action.[9] ECF No. 21-1 at 14.  It argues, however, that she has failed to present evidence that she was terminated under circumstances giving rise to an inference of discrimination.  *Id.*

"Circumstances contributing to a permissible inference of discriminatory intent may include the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge; or the timing of the discharge." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir. 1994) (internal

---

[9] Rodriguez argues that "a fact finder would be entitled to consider Enica's entire course of conduct in issuing Plaintiff pretextual disciplines, berating her, refusing to accommodate her, denying her requests for PTO, and otherwise discriminating against her and her fellow female managers on the basis of her sex, as compared with similarly-situated male comparators."  ECF No. 26 at 20.  It is not clear if Rodriguez seeks to argue that each of these actions is an "adverse employment action" for purposes of her discrimination claims.  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment.  An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (internal citations and quotation marks omitted).  None of the employment actions described—apart from Rodriguez's ultimate termination—rise to the level of an adverse employment action for purposes of her discrimination claims because they did not materially change the terms and conditions of her employment.  Rodriguez's pay and benefits did not decrease or change, she was not demoted, and her job responsibilities were not significantly altered as a result of the disciplines, denials of PTO requests, or "berating" from Enica.  *See Guzman v. City of New York*, 93 F. Supp. 3d 248, 257 (S.D.N.Y. 2015) (holding that various employment actions including logging of plaintiff's name on a violations log "on multiple occasions for various purported infractions," denial of a request for an emergency day off to care for sick daughter, issuance of disciplinary letter for violation of a department policy, and closer monitoring of plaintiff's performance than that of other employees were not adverse employment actions, where plaintiff "conceded that none of the[] actions led to a decrease in her salary or a loss in benefits or vacation days"); *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 133 (2d Cir. 2015) ("[Plaintiff] complains that he was paid late, denied certain vacation requests, and forced to work overtime when his replacement did not show up.  These troubles are no more disruptive than a mere inconvenience or alteration of job responsibilities.") (internal quotation marks omitted).  I will nevertheless consider whether evidence of Enica's conduct during the course of Rodriguez's employment helps support an inference that he ultimately terminated her employment for a discriminatory reason.

citations omitted).  Rodriguez argues that she has presented evidence that Wal-Mart (and specifically Enica) subjected Rodriguez and other female employees to less favorable treatment than their male counterparts, and that this evidence is sufficient to support an inference of discrimination.  I disagree.

Rodriguez has failed to present any admissible evidence from which a reasonable juror could infer that she was treated less favorably than her male counterparts.  While Rodriguez argues that her August 21, 2018 and November 7, 2018 disciplinary actions disciplined her for conduct for which male ASMs were not disciplined, she has failed to present any admissible evidence that the male ASMs were not disciplined.  With respect to the November 7 discipline, Rodriguez has also failed to present evidence that the key control violations she described male employees committing were comparable to her key control violation, testifying at her deposition that she was not aware of whether employees improperly disposed of merchandise on the occasions where the male ASMs gave out their keys.  While Rodriguez also argues that Enica denied her PTO requests while granting those of male ASMs, she testified at her deposition that a female employee—Viria Massa—was among those who received the leave they requested.  Thus, Enica's denials of her PTO requests cannot support an inference that he treated Rodriguez less favorably based on her gender.

Rodriguez has also failed to present any admissible evidence that could support an inference that Enica generally treated female Wal-Mart employees less favorably than their male counterparts.  Rodriguez argues that Enica treated Sweeney less favorably than male employees, but the only evidence she cites as support (her testimony regarding conversations with Sweeney about Sweeney's desire to transfer stores due to conflicts with Enica and Sweeney's displeasure at Enica for not permitting her to take the full amount of time she requested off to attend a family

funeral), even if it were not inadmissible hearsay, does not support an inference that Enica acted in a discriminatory manner toward Sweeney.  Rodriguez does not recount any statements from Sweeney indicating that her displeasure with Enica was based on what she perceived to be gender-discriminatory treatment.  Further, while Rodriguez testified that Sweeney did not receive all the time off she requested to attend the family funeral even though male employees got all the time off they requested, the only example she provided was that of Vincent Clark, and she offered insufficient detail regarding Clark's situation as compared to Sweeney's to support an inference that Enica treated Sweeney less favorably than Clark.  Thus, Rodriguez has presented no admissible evidence indicating that Enica treated Sweeney less favorably than her male counterparts.  Rodriguez also asserts that Enica acted in a discriminatory manner toward Massa, but she has failed to present any admissible evidence in support of that assertion, as noted above in the Court's summary of the factual background of this case.  Finally, Rodriguez argues that Enica acted in a discriminatory manner toward Sheets, but she has again failed to present any admissible evidence from which a reasonable juror could infer that this assertion is true.  While Rodriguez testified that Sheets was disciplined for performance issues for which a similarly situated male manager was not disciplined, she stated at her deposition that she "d[idn't] know" if the male manager was ever disciplined.  ECF No. 26-1 at 51.  Accordingly, this testimony does not indicate that Enica treated Sheets less favorably than her male counterpart.  Rodriguez has presented no other evidence indicating that Enica discriminated against Sheets due to her gender.

While Rodriguez did not include this fact in her Local Rule 56(a)2 statement or her response brief, she did testify at her deposition that a male Wal-Mart employee named "Chris" was "promoted to take over [her] spot . . once [she] was fired."  ECF No. 26-1 at 115.  Evidence

that a man was offered Rodriguez's position after she was discharged is sufficient to meet her minimal burden of establishing a *prima facie* case of gender discrimination.  I therefore find that she has established a *prima facie* case of gender discrimination.

### iii.   Non-Discriminatory Reason

As Rodriguez has established her *prima facie* case, the burden then shifts to Wal-Mart, which has presented evidence of a legitimate, non-discriminatory reason for her termination. According to Wal-Mart, Rodriguez was terminated due to "her inability to perform her job due to multiple Open-Door complaints, unsafe work practices, and violations of Wal-Mart's core beliefs, chief among them respect for the individual."  ECF No. 21-8 at 6 ¶ 28.

### iv.   Pretext

Rodriguez has failed to present evidence that these stated reasons for her termination are pretextual.  Rodriguez has presented no direct evidence of gender discrimination.  She has also presented no evidence indicating that Wal-Mart did not receive the Open-Door complaints from employees she supervised complaining about her conduct toward them, or that those complaints did not constitute a justifiable basis for terminating her employment.  While Rodriguez testified at her deposition that she did not engage in unsafe work practices by climbing up on a steel frame, ECF No. 26-1 at 187, as reported by one employee in her Open-Door complaint against Rodriguez, Rodriguez has presented no evidence that Enica or any other Wal-Mart supervisor was aware that this allegation against her might have been untrue.  Finally, Rodriguez does not argue—and has presented no evidence indicating—that Wal-Mart's termination of her employment did not comply with its Disciplinary Action Policy.  Thus, Rodriguez has failed to present evidence from which a reasonable juror could infer that she was discriminated against based on her gender in violation of the CFEPA.

B. *CFEPA Retaliation Claim*

i. *Applicable Law*

Rodriguez claims that Wal-Mart terminated her in retaliation for engaging in conduct protected by the CFEPA.  "To establish a prima facie case of retaliation, a plaintiff must show four elements: (1) that she participated in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action against her; and (4) a causal connection between the protected activity and the adverse employment action." *Phadnis v. Great Expression Dental Ctrs of Conn., P.C.*, 153 A.3d 687, 698 (Conn. App. 2017) (internal quotation marks and alterations omitted).  As with the CFEPA discrimination claims discussed above, if a plaintiff makes out a prima facie case, the burden then shifts to the defendant to present evidence of a non-retaliatory reason for the adverse employment action.  If the defendant is able to do so, the burden shifts back to the plaintiff to present evidence that the stated reason is pretextual.

ii. Prima Facie *Case*

Wal-Mart argues that Rodriguez's CFEPA retaliation claims fails because she has not presented any evidence from which a reasonable juror could infer a causal connection between her June 5, 2019 helpline complaint and her July 8, 2019 termination.  ECF No. 21-1 at 19.[10] This is so, Wal-Mart argues, because the multiple "Open Door" complaints against the plaintiff

---

[10] Wal-Mart acknowledges for purposes of its motion that Rodriguez's helpline complaint "arguably qualifies as protected activity," but it argues that none of her other complaints constitute protected activity under the CFEPA. ECF No. 21-1 at 18.  It does not argue that Enica was unaware of Rodriguez's helpline complaint.

Rodriguez argues that the record contains evidence that she "complain[ed]—repeatedly—that Enica treated male managers more favorably."  ECF No. 26 at 31.  In fact, while Rodriguez has presented evidence that she made various complaints to Enica's superiors that Enica was treating her in an unfair or even abusive fashion, only one of those complaints (besides her June 5, 2019 helpline complaint) makes any reference to gender.  In that complaint—a March 3, 2019 email to Petersen—Rodriguez wrote that Enica "never makes . . . an effort to improve morale with his female management team."  ECF No. 26-8 at 1; *compare with* ECF Nos. 26-12 (June 24, 2018 email to Robinson regarding PTO), 26-5 and 26-1 at 89 (emails and in-person conversation with Robinson regarding recent disciplinary action), 26-6 (February 19, 2019 email to Spencer regarding disciplinary action), none of which reference gender. Even assuming that the March 3, 2019 email constitutes protected conduct, Rodriguez has failed to present any evidence from which a juror could infer that Enica was aware of this complaint.

between June 27 and July 1, 2019 constitute "intervening events" that break any causal chain between the June 5, 2019 complaint and the plaintiff's termination. In support of its argument, Wal-Mart cites decisions of district courts within this Circuit holding that while the "relatively close temporal proximity between [a plaintiff's] protected activity and the adverse action could support an inference of causal relationship," the occurrence of a "significant intervening event" that "alone gave [the d]efendant grounds to terminate [the p]laintiff" can dispel any inference of causation created by the temporal proximity. *Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 342 (D. Conn. 2013) (holding that incident in which plaintiff (a truck driver) caused damage to a woman's vehicle due to careless driving served as such a "significant intervening event" between his protected conduct one month before the accident and his termination the day after); *see also Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597(DLC), 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010) (holding that plaintiffs failed to establish causation where defendant presented evidence that it terminated them because they were involved in a significant security breach that occurred after the protected conduct: "An intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference."); *Dortch v. New York City Dept. of Ed.*, No. 14-cv-2534(NGG)(PK), 2016 WL 2621076, at *8-9 (E.D.N.Y. Mar. 23, 2016) (noting—after holding that temporal gap of three months was insufficient to establish causation—that receipt of anonymous call from parent of student coached by plaintiff complaining of plaintiff's "verbal abuse" of his students would constitute an "intervening event" sufficient to break the causal chain). Wal-Mart has cited no authority—and I have found none— indicating that the Second Circuit has endorsed this approach to evaluating causation for purposes of a plaintiff's *prima facie* case under Title VII. In addition, the misconduct described

in the complaints against Rodriguez is not as "significant" an intervening event as the security

breach, truck accident, and verbal abuse of students at issue in *Rivera*, *Joseph*, and *Dortch*.  As a

result, I conclude that the temporal proximity between Rodriguez's complaint and her

termination, which occurred approximately one month apart, is sufficient to establish causation

for purposes of her prima facie case.

### iii.   Non-Retaliatory Reason & Pretext

I nevertheless conclude that Rodriguez has failed to present evidence from which a

reasonable juror could infer that Wal-Mart retaliated against her for engaging in conduct

protected under the CFEPA.  As discussed above in the context of Rodriguez's discrimination

claims, Wal-Mart has presented evidence of a legitimate, non-retaliatory reason for terminating

Rodriguez's employment ("her inability to perform her job due to multiple Open-Door

complaints, unsafe work practices, and violations of Wal-Mart's core beliefs, chief among them

respect for the individual," ECF No. 21-8 at 6 ¶ 28).  Rodriguez has presented no direct evidence

indicating that Enica intended to retaliate against her when he terminated her employment, and—

as discussed above in the context of her gender discrimination claims—she has presented no

admissible evidence indicating that Wal-Mart's stated reasons for her termination are pretextual.

While her evidence regarding the "temporal proximity" between her protected conduct and her

termination may give rise to an inference of retaliation for the purposes of establishing her *prima*

*facie* case "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext

stage." *Zann Kwan*, 737 F.3d at 847.  Accordingly, Rodriguez has failed to present sufficient

evidence in support of this claim to survive summary judgment.

### C.  CFEPA Pregnancy Discrimination Claim

### i.   Applicable Law

As outlined above the discussion of Rodriguez's gender discrimination claim, the *McDonell Douglas* framework applies to Rodriguez's CFEPA discrimination claims, including her pregnancy discrimination claim. *Kaytor*, 609 F.3d at 556 (holding that CFEPA discrimination claims are subject to *McDonnell Douglas* framework); *see also Phadnis*, 153 A.3d at 694 (employing the *McDonnell Douglas* framework to analyze a CFEPA pregnancy discrimination claim).

ii.   Prima Facie *Case*; *Non-Discriminatory Reason; and Pretext*

Wal-Mart argues that Rodriguez's pregnancy discrimination claim fails because she has not presented evidence from which a reasonable juror could infer a causal connection between Enica's learning of Rodriguez's pregnancy and her ultimate termination due to the "intervening event" of Enica's receipt of complaints against Rodriguez. I disagree, for the reasons outlined above in my discussion of Rodriguez's CFEPA retaliation claim. Nevertheless, I conclude, as I did for Rodriguez's CFEPA gender discrimination and retaliation claims, that Wal-Mart has presented evidence of a legitimate reason for Rodriguez's termination, and that Rodriguez has failed to present any evidence that could lead a juror to infer that this stated reason was pretextual. As Rodriguez has also not presented any direct evidence of discriminatory intent based on her pregnancy or circumstantial evidence that would warrant a finding of pretext, I conclude that she has failed to present evidence from which a reasonable juror could infer that she was discriminated against due to her pregnancy.

D.  *FMLA Retaliation Claim*

i.   *Applicable Law*

Rodriguez alleges that she was terminated in retaliation for exercising her rights under the FMLA. ECF No. 1-1 at 9. "The Second Circuit has recognized two types of FMLA

claims—'interference' claims and 'retaliation' claims." *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 463 (S.D.N.Y. 2011) (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) ); *see also* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."); 29 C.F.R. § 825.220(c) ("The [FMLA's] prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."). The Second Circuit has held that both claims arise under the same statutory prohibition against "interference." *Woods v. START Treatment & Recovery Ctrs.*, 864 F.3d 158, 166 (2d Cir. 2017) ("We hold that FMLA retaliation claims [in which an employee claims she was terminated for taking FMLA leave] are grounded in 29 U.S.C. § 2615(a)(1) . . . .").

FMLA retaliation claims are analyzed under the *McDonnell Douglas* framework. *Graziado v. Culinary Institute of America*, 817 F.3d 415, 429 (2d Cir. 2016).[11] "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for [her] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* (internal quotation marks and alteration omitted).

---

[11] The Second Circuit did not decide in *Graziado* whether this framework should govern in all FMLA cases, 817 F.3d at 429 n. 7 ("Since we find that Graziado meets the stricter *McDonnell Douglas* test, we need not decide today whether an easier test should govern."), and it has since rejected the contention that courts should apply a "but for" causation standard in determining whether a party is liable for FMLA retaliation in *Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 169 (2d Cir. 2017). As I have previously observed, "[s]ince the *McDonnell-Douglas* test implies a 'but for' causation standard, *see Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 845-46, *Woods* arguably suggests that the [the Ninth Circuit's easier] standard should apply to [FMLA retaliation claims] claims . . . in lieu of the *McDonnell-Douglas* test." *Lopez v. Chubb & Son*, No. 3:16-CV-00934 (MPS), 2018 WL 4211324, at *4–5, n.3 (D. Conn. Sept. 4, 2018). Nevertheless, the parties both indicate that this claim should be analyzed under the *McDonnell Douglas* framework, and this approach aligns with that of district courts within this Circuit, even after *Woods*. *See, e.g., Hall v. Urban Assembly, Inc.*, No. 19-cv-11572(JMF), 2022 WL 19708, at *2 (S.D.N.Y. Jan. 3, 2022) (holding that FMLA retaliation claims are subject to *McDonnell Douglas*, while FMLA interference claims are not); *Burns v. Rovella*, No. 3:19-cv-553(JCH), 2021 WL 4263372, at *11 (D. Conn. Oct. 12, 2021) (applying *McDonnell Douglas* framework to FMLA retaliation claim).

"If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." *Id*.

### ii.   Prima Facie *Case*

Wal-Mart again argues that Rodriguez has failed to make out a prima facie case.  I disagree.  Rodriguez has presented evidence that she was terminated approximately one month after exercising her rights under the FMLA.  In addition, Rodriguez has presented evidence from which a reasonable juror could infer that Enica harbored some hostility toward her for taking leave.  First, Rodriguez has presented evidence that Enica instructed her subordinates "not to listen to what [Rodriguez] had to say" in advance of her August 2018 FMLA leave.  ECF No. 26-1 at 68-69.  Second, Rodriguez has presented evidence that Enica forced her to work a very physical shift immediately after she returned from FMLA leave for foot surgery in April 2018, even after she informed him that she could not engage in much physical activity.  While Enica has offered an explanation for why he told Rodriguez's subordinates not to follow her directions and denied forcing her to do physical labor after her surgery, a juror need not credit that explanation or that denial.  Accordingly, I conclude that Rodriguez has presented evidence sufficient to satisfy the minimal burden she bears at the *prima facie* case stage.

### iii.   *Non-Discriminatory Reason & Pretext*

As discussed above in the context of Rodriguez's gender discrimination claim, however, Wal-Mart has presented evidence of a legitimate, non-retaliatory reason for her to dismissal, and Rodriguez has failed to present any evidence that could lead a reasonable juror to conclude that this reason is pretextual (or any evidence that retaliatory intent motivated her termination).

Accordingly, Rodriguez has failed to present evidence from which a reasonable juror could infer that she was terminated in retaliation for having requested or taken FMLA leave.

**IV.     Conclusion**

Defendants' motion for summary judgment (ECF No. 21) is GRANTED.


IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:         Hartford, Connecticut
                   March 22, 2022